IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01968-CNS-KAS

UNITED STATES OF AMERICA and
GAIL S. ENNIS, Inspector General of the Social Security Administration,

    Petitioners,

v.

COLORADO DEPARTMENT OF LABOR AND EMPLOYMENT,
Division of Workers' Compensation,

    Respondent.

---

**ORDER ON PETITION**

---

This matter is before the Court on the Petition for Summary Enforcement of Administrative Subpoena (the "Petition") (ECF No. 1) of Petitioner United States, acting on behalf of the Inspector General of the Social Security Administration (the "SSA-OIG"). The Petition is fully briefed by the SSA-OIG and Respondent, the Workers' Compensation Division of the Colorado Department of Labor and Employment (the "Division"). Upon consideration of the Petition and the applicable rules and case law, and being otherwise fully advised, the Court GRANTS the Petition.

**I.  BACKGROUND**

Pursuant to the Inspector General Act of 1978 (the "IG Act"), the SSA-OIG "conduct[s], supervise[s], and coordinate[s] audits and investigations" of the programs and operations of the Social Security Administration (the "SAA"). 5 U.S.C. § 404(a)(1). In August 2021, the SSA-OIG began an audit entitled *The Impact of Workers' Compensation and Public Disability Benefits' Reverse Offset Plans on the Disability Insurance Program* (the "Audit") (ECF No. 1, ¶ 11). The

1

goal of the audit was to compare the data of workers' compensation recipients in reverse offset states with data of federal Social Security Disability Insurance ("SSDI") recipients in the SSA's systems (*id.*, ¶ 12). In a reverse offset state, state workers' compensation benefits are reduced based on the beneficiaries' receipt of SSDI in adherence with the Social Security Act's limitation on combined federal and state disability payments that an individual may receive (*id.*, ¶ 11). *See* 42 U.S.C. § 424a(a). In support of the Audit, the SSA-OIG subpoenaed workers' compensation data from all reverse offset states, including Colorado (*id.*, ¶ 12). The requested data would help the SSA-OIG determine whether SSDI payments were correct and whether the SSA should modify its system to identify and correct erroneous SSDI payments (*id.*).

Pursuant to the Audit, on November 16, 2020, the SSA-OIG subpoenaed the Division, the agency charged with enforcing and administering the Colorado Workers' Compensation Act (the "CWCA"), codified at C.R.S. § 8-40-101, *et seq.* (*see* ECF No. 1-4). The SSA-OIG sought specific information for every individual who received state workers' compensation payments between January 1, 2019, and December 31, 2019 (ECF No. 1, ¶ 18). The information requested included individual's names, dates of birth, social security numbers, illness or injury dates, case details, disabilities, payment amounts, SSDI receipt status, and any application of an offset (*id.*, ¶ 19).

On December 11, 2020, the Division informed the SSA that it would not comply with the subpoena because the CWCA designates the information in workers' compensation claim files as confidential (*id.*, ¶¶ 23–24). The Parties spoke by phone twice in December 2020, and the Division reiterated that it would not comply with the subpoena in a letter dated January 15, 2021 (*id.*, ¶ 25–26; ECF No. 1-6).

On September 15, 2022, the SSA sent a letter to the Division, inquiring as to whether the Division maintained its objection to the subpoena (ECF No. 1-7; ECF No. 1, ¶ 31). On September

21, 2022, the Division confirmed via phone that it maintained its objections (ECF No. 1, ¶ 32). On July 6, 2023, the Division was advised that the Department of Justice had authorized the present subpoena enforcement action (*id.*, ¶ 33). The SSA-OIG subsequently filed its Petition on July 31, 2023, asking the Court to issue an order directing Respondent Division to comply with the SSA-OIG's administrative subpoena (*see generally id.*).

## II. DISCUSSION

For the reasons set forth below, the Court finds that the SSA-OIG's subpoena is sufficient under the *Morton Salt Co.* factors, and that to the extent the CWCA's confidentiality provision would bar the disclosure of the subpoenaed information, it is preempted by federal law. Accordingly, the subpoena must be enforced.

### A.  The *Morton Salt Co.* Test

5 U.S.C. § 406(a)(4) authorizes the SSA-OIG to seek an order from this Court requiring compliance with a subpoena issued pursuant to the IG Act. *Id.* ("[I]n the case of contumacy or refusal to obey," a subpoena issued by an Inspector General "shall be enforceable by order of any appropriate United States district court."). However, the role of a district court in a proceeding to enforce an administrative subpoena is "sharply limited." *Scalia v. Pure Pollination, LLC*, No. 20-MC-00227-DDD-STV, 2021 WL 7407012 at *2 (D. Colo. Feb. 1, 2021) (internal quotes and citations omitted). "So long as the agency makes a plausible argument in support of its assertion of jurisdiction, a district court must enforce the subpoena if the information sought there is not plainly incompetent or irrelevant to any lawful purpose of the agency." *Id.* An administrative subpoena is sufficient if three factors are met: "if the inquiry is within the authority of the agency, the demand is not too indefinite[,] and the information sought is reasonably relevant."[1] *United*

---

[1] Respondent Division does not submit that the subpoena fails to meet any of the *Morton Salt Co.* factors (*See* ECF No. 8 at 2–3, quoting the *Morton Salt Co.* factors but omitting argument that any factor is not met). Accordingly, the

3

*States v. Morton Salt Co.,* 338 U.S. 632, 652 (1950); *United States v. Zook*, 569 F. Supp. 3d 1101, 1106 (D. Colo. 2021).

First, the SSA-OIG's subpoena was issued pursuant to its statutory authority. *See Morton Salt*, 338 U.S. at 652. Under the IG Act, the SSA-OIG is authorized to "conduct, supervise, and coordinate audits and investigations relating to [the SSA's] programs and operations" and to issue administrative subpoenas "necessary in the performance of the[se] functions." 5 U.S.C. §§ 404(a)(1), 406(a)(4). The SSA-OIG's inquiry into workers compensation claims in reverse offset states like Colorado clearly falls within this authority, because the inquiry seeks information necessary for the SSA-OIG to audit the payments of SSDI benefits to recipients also receiving state workers' compensation benefits. Thus, the Court concludes that the SSA-OIG's subpoena satisfies the first *Morton Salt Co.* prong.

Second, the subpoena is not too indefinite. *See Morton Salt Co.*, 338 U.S. at 652. To be sufficiently definite, a subpoena must "provide guidance as to what is to be produced by standards or criteria that make clear the duty of the person subpoenaed." *Resol. Tr. Corp. v. Greif*, 906 F. Supp. 1457, n.1 (D. Kan. 1995). The SSA-OIG submits that the subpoena seeks specific, readily ascertainable, electronically stored workers' compensation claims and claimant data for a single calendar year, and is thus sufficiently definite. *See, e.g., U.S. Immigr. & Customs Enf't v. Gomez*, 445 F. Supp. 3d 1213, 1216 (D. Colo. 2020) (holding administrative subpoena was enforceable where respondent did not prove indefiniteness by showing the information was "not discernable or unavailable"). Accordingly, the Court finds the SSA-OIG has satisfied the second *Morton Salt* prong for enforcement of its administrative subpoena.

---

Court finds that Respondent Division concedes that the subpoena meets each factor. *See, e.g., Am. Tradition Inst. v. Colorado*, 876 F. Supp. 2d 1222, 1237 (D. Colo. 2012) (determining plaintiffs "impliedly concede[d]" argument by failing to address it in response brief).

Third, the SSA-OIG's subpoena is reasonably relevant to a legitimate area of inquiry. *See Morton Salt*, 338 U.S. at 652; *see also In re Gimbel*, 77 F.3d 593, 599 (2d Cir. 1996) (noting that agencies, "when authorized by Congress, may utilize their subpoena power to obtain information that is relevant to a legitimate area of inquiry"). An agency "can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642; *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989). "So long as the material requested touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." *Sandsend Fin. Consultants, Ltd.,* 878 F.2d at 882 (internal citations and quotation marks omitted); *see also Scalia*, 2021 WL 7407012, at *2. Here, the subpoena seeks Colorado workers' compensation claims and claimant information that is necessary to complete the SSA-OIG's Audit of SSDI benefits paid by the SSA to workers in reverse offset jurisdictions. Thus, the Court finds that the subpoena is reasonably relevant to an investigation the SSA-OIG has authority to conduct and satisfies the final *Morton Salt Co.* prong.

In sum, Petitioner SSA-OIG's subpoena has met all three requirements for enforceability under the test set forth in *Morton Salt Co.*

### B.  CWCA Preemption

Respondent argues that the subpoena is unreasonable because Colorado law expressly classifies the requested documents as confidential (ECF No. 8 at 3). Under the CWCA, the information in Colorado workers' compensation claim files is presumed confidential and can only be reviewed by parties to a claim and their attorneys, parties to another claim involving the same claimant, or one who obtains from the claimant a waiver for the release of information in their claim file. C.R.S. § 8-47-203(1). While the Division is also authorized to permit access "to other

5

governmental entities," it may only do so as required for the government entity's official duties and "only if those official duties relate to enforcement of" the CWCA. *Id.* The Division argues that the SSA-OIG does not have any official duties relating to the enforcement of the CWCA and, accordingly, it is not permitted by statute to disclose confidential information in claim files to the SSA-OIG (ECF No. 8 at 4). *See, e.g., Flavell v. Dep't of Welfare*, 355 P.2d 941, 943 (Colo. 1960) (explaining that the powers of administrative agencies are limited by the statutes by which they are created, and agencies are without power to act contrary to the law or to exceed the authority conferred upon them by statute).

To the extent that the CWCA's confidentiality provision bars the release of Colorado workers' compensation data to the SSA-OIG, the CWCA is preempted because it directly conflicts with the SSA-OIG's subpoena authority pursuant to the IG Act. The Supremacy Clause of the U.S. Constitution empowers Congress to preempt state law; because of the supremacy of federal law, "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)); *see* U.S. Const. art. IV, cl. 2.

Critically, Respondent Division does not dispute that the CWCA's confidentiality provision is preempted by the IG Act's subpoena power (*see generally* ECF No. 8). Instead, Respondent Division offers that if it complied with the subpoena in violation of the CWCA confidentiality provision, knowledge that information in claim files could be turned over to other government entities would discourage some number of injured individuals from filing claims, leaving them without access to medical treatments or shifting the cost of treatment to health insurance or the public (*id.* at 5–6). However, such arguments are immaterial to a preemption analysis. *See, e.g., S. Dakota Min. Ass'n, Inc. v. Lawrence Cnty.*, 155 F.3d 1005, 1009 n.4 (8th Cir.

1998) (rejecting reliance on the "purposes and policies" of local ordinance as "immaterial to the preemption analysis" because "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause regardless of the underlying purpose of its enactors" (internal citation and quotation marks omitted); *Sw. Bell Wireless Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs*, 199 F.3d 1185, 1194 (10th Cir. 1999) ("The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail" (quotation marks omitted)) (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)).

Moreover, courts have routinely enforced administrative subpoenas issued under the IG Act despite state law restrictions on disclosure. *See, e.g., U.S. on Behalf of Agency for Int'l Dev. v. First Nat. Bank of Md.*, 866 F. Supp. 884, 886-87 (D. Md. 1994) (holding that the IG Act preempted a Maryland privacy statute requiring notice to bank customers); *United States v. N.Y. State Dep't of Tax'n & Fin.*, 807 F. Supp. 237, 240-41 (N.D.N.Y. 1992) (holding that a New York privacy statute, which mandated confidentiality of tax and wage records, could not be used to avoid compliance with OIG administrative subpoena, as statute conflicted with IG Act and was thus preempted); *U.S. ex rel. Off. of Inspector Gen. v. Phila. Hous. Auth.*, No. 10-0205, 2011 WL 382765, at *5 (E.D. Pa. Feb. 4, 2011) (finding a Pennsylvania law restricting collection of social security numbers was preempted by the IG Act); *United States v. Machias Sav. Bank*, No. 1:21-MC-00320-LEW, 2022 WL 58660, at *2 (D. Me. Jan. 6, 2022) (finding "an inspector general's broad subpoena powers" preempted a Maine law requiring bank customer notification of subpoena and authorization of information release), *report and recommendation adopted*, No. 1:21-MC-00320-LEW, 2022 WL 204633 (D. Me. Jan. 24, 2022); *U.S. ex rel. Richards v. De Leon Guerrero*, No. MISC. 92-00001, 1992 WL 321010, at *21 (D. N. Mar. I. July 24, 1992) (finding a territorial

law on confidentiality of tax returns was preempted by the IG Act), aff'd, 4 F.3d 749 (9th Cir. 1993).

In light of the above, the Court concludes that Respondent Division cannot invoke the CWCA's confidentiality provision in order to refuse to produce the documents requested in the SSA-OIG's otherwise sufficient subpoena.

### III. CONCLUSION

Consistent with the foregoing analysis, the Court ORDERS as follows:

(1) The Petition for Summary Enforcement of Administrative Subpoena (ECF No. 1) is GRANTED and Respondent CDLE shall produce all requested information on or before **December 29, 2023** and

(2) The Clerk of Court is directed to close this case.

Dated this 29th day of November 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

8